# EXHIBIT A

**IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION**

**DANA M. WHITE,**

*Plaintiff,*

v.

**EQUIFAX INFORMATION SOLUTIONS, LLC**

*Defendant*

Case No.:

UNOFFICIAL DOCUMENT

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, **Dana White** ("**Ms. White**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Equifax Information Solutions, LLC** ("**Equifax**") (the "Defendant"), and stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action for damages more than $8,000 but less than $50,000, exclusive of attorneys' fees and costs brought by Ms. White against the Defendant for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA").

**JURISDICTION AND VENUE**

2. Jurisdiction for Plaintiff's FCRA claims arises under FCRA, 15 U.S.C. § 1681p and § 34.01, Fla. Stat.

3. The Defendant is subject to the provisions of the FCRA and to the jurisdiction of this Court pursuant to § 34.01, Fla. Stat.

4. Venue is proper in the Pasco County, because the acts complained of were committed and / or caused within Pasco County, Florida.

## PARTIES

### Ms. White

5. Ms. White is a natural person who at all times relevant resided in the city of Zephyrhills, Pasco County, Florida.

6. Ms. White is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Equifax

7. **Equifax** is a Georgia limited liability company with a principal business address of 1550 Peachtree Street, NW, Atlanta, GA 30309.

8. Equifax is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301**.

9. Equifax is a "Consumer Credit Reporting Agency" ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that, for monetary fees, dues, or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use

UNOFFICIAL DOCUMENT

various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

10. Until April 2026, Equifax incorporated information furnished by Opportunity Financial, Inc. d/b/a OppLoans ("OppLoans") concerning an unsecured personal loan with an account number ending with 4845 (the "Account") into Ms. White's credit file.

11. The loan had a stated interest rate exceeding 150% annually – more than eight times the maximum legal interest rate in Florida – and was, purportedly, originated by FinWise Bank in Utah, with OppLoans acting as the loan's servicer.

12. On or about January 21, 2020, Ms. White filed a voluntary Chapter 7 bankruptcy case in the Middle District of Florida, Tampa Division, identified by case number 8:20-bk-00455 (the "Bankruptcy Case").

13. Ms. White listed FinWise/OppLoans in her Bankruptcy Case petition and bankruptcy schedules as an unsecured creditor with respect to the Account.

14. On or about July 29, 2020, the United States Bankruptcy Court for the Middle District of Florida entered an order of discharge (the "Discharge Order") in Ms. White's Bankruptcy Case.

15. Equifax reported Ms. White's Bankruptcy petition and discharge in the credit file it maintained about Ms. White, and the relevant tradeline appears in the public records section of Ms. White's consumer credit disclosure, as well as in reports Equifax sold about Ms. White.

UNOFFICIAL DOCUMENT

16. However, from August 2020 through December 2025, Equifax reported the Account as having a balance of $2,688 actively owed, that payment was severely past due and charged-off, and did not disclose in any capacity the $2,688 balance concerning the Account was discharged through Ms. White's Bankruptcy Case.

17. Equifax reported the Account was opened on March 23, 2019.

18. Therefore, Equifax clearly knew the establishment of the Account *preceded* the filing of Ms. White's Bankruptcy Case and thus should report a $0 balance and note it was discharged through bankruptcy.

19. When Ms. White requested her credit file disclosure from Equifax on February 6, 2026, the Account tradeline indicated it was reported by "FinWise."

20. However, Equifax's online dispute portal identifies the same tradeline as being reported by "Opportunity Financial LLC/Resolution Dept."

21. As Experian and Trans Union both report the tradeline as being furnished by OppLoans, on information and belief, the tradeline data was furnished by OppLoans.

22. OppLoans continued to report, monthly, that there was a past-due, charged-off balance of $2,688 still owed by Ms. White until December 2025.

23. OppLoans did not report to Equifax that there was some reasonable basis the debt was still owed, such as a reaffirmation of the debt as part of the Bankruptcy Case.

24. In December 2025, Ms. White filed a petition for Chapter 13 Bankruptcy in the Middle District of Florida.

UNOFFICIAL DOCUMENT

25. Around December 2025, OppLoans discontinued reporting any balance and updated its reporting to indicate the balance was included in her *Chapter 13* Bankruptcy petition, even though it was not, nor could it have been, since it was discharged five years prior in her Chapter 7 petition.

26. Thus, from August 2020 to December 2025, information which Equifax should have known was, on its face, false, continued to appear in Ms. White's credit file and on reports Equifax sold about her.

27. The inclusion of a balance related to an unsecured personal loan incurred *prior* to a consumer filing bankruptcy is unreasonable, absent the creditor reporting a Consumer Information Indicator Metro 2 code of "R" (Chapter 7 Bankruptcy, reaffirmation of debt).

28. It is readily apparent Equifax failed to utilize reasonable procedures to ensure maximum possible accuracy in the reports it sold concerning Ms. White.

29. The other major consumer reporting agencies, including Experian Information Solutions, Inc. and Trans Union, LLC, received the identical Metro 2 encoded information about the Account from OppLoans.

30. In contrast to Equifax, Experian and Trans Union quickly correctly updated the Account to reflect a $0 balance and a status of "Discharged in Chapter 7 Bankruptcy" in Ms. White's credit file. For example, Experian reported the Account as such:

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| OPPLOANS/FINWISE | LAI0058.... | Not reported | 03/23/2019 | Discharged through Bankruptcy Chapter 7 |

UNOFFICIAL DOCUMENT

31. On or about April 20, 2026, Ms. White submitted a dispute to Equifax regarding the inaccurate reporting of the Account, specifically pointing out that the debt had been discharged in her Chapter 7 Bankruptcy.

32. On April 22, 2026, just two days after the dispute was submitted, Equifax notified Ms. White that it had completed its investigation, determined the information *could not be* verified as accurate, and deleted the tradeline in its entirety from her credit file.

33. The fact that Equifax was quickly and easily able to confirm inaccuracy of the data – it's investigation took less than 48 hours -- demonstrates the lack of reasonable procedures designed to ensure maximum possible accuracy of reports sold by Equifax in selling reports on Ms. White in the preceding five years.

34. The false information that a charged-off balance was still owed, post-bankruptcy, by Ms. White was disseminated by Equifax to dozens of third parties, including many creditors and potential creditors, including Capital One and Navy Federal Credit Union.

35. The inaccurate information negatively impacted Ms. White's credit scores, reputation, and potential ability to obtain new credit.

36. Because the Account was a personal loan showing a past-due and charged-off balance of $2,688, the presence of the Account as a purported unpaid obligation had drastic and severe effect on Ms. White's credit scores, especially since it appeared to readers of Ms. White's report that she had a "new" delinquency almost immediately after receiving a Chapter 7 Bankruptcy discharge.

UNOFFICIAL DOCUMENT

37. FICO® credit scores, the most commonly-used credit scores in the nation, heavily consider payment history when computing a consumer's score, with this factor alone making up roughly 35% of the consumer's overall score.

38. As a result of the Defendant's conduct, Plaintiff suffered emotional distress in various forms. She has suffered anxiety, inconvenience, frustration, annoyance, fear, and hopelessness, which has manifested itself in a lack of sleep.

39. Despite enduring the bankruptcy process – which is designed and intended to give consumers like the Plaintiff a fresh start – Ms. White has been left fearing the Account will haunt her forever.

40. Ms. White has been denied the benefit of her rights under the Bankruptcy laws.

41. Ms. White has wasted a significant and material amount of time dealing with the Defendant's misconduct.

42. Ms. White retained the undersigned law firm for the purpose of pursuing this matter against Defendant, and has assigned her right to fees and costs to such firm.

UNOFFICIAL DOCUMENT

**COUNT I**
**EQUIFAX'S WILLFUL VIOLATIONS of 15 U.S.C. § 1681e(b)**

43. Plaintiff adopts and incorporates Paragraphs 1 – 42 as if fully restated herein.

44. Defendant failed to follow reasonable procedures to ensure maximum possible accuracy by allowing a consumer debt, which had been opened and become

delinquent well before Plaintiff's Bankruptcy case was filed, to continue to report to Plaintiff's credit file well after her bankruptcy discharge.

45. Equifax could have adopted a procedure requiring the data furnisher to provide a copy of the discharge paperwork or a reaffirmation of debt prior to accepting reporting as a way of preventing this type of inaccuracy from occurring.

46. The easy verifiability of the error is underscored by Equifax's own actions. Equifax required only two days to determine the information was unreportable once a formal dispute was submitted. Equifax's failure to identify this patent error for over five years, despite possessing the discharge information in its own records database, constitutes a reckless disregard for its obligations under the FCRA.

47. Instead, Equifax had no such procedures in place.

48. Ms. White is far from being the first consumer who has had to dispute a discharged debt inaccurately reporting as owed to Equifax; public records show a considerable number of lawsuits brought against Equifax for this very reason.

49. The Defendant failed to uphold its duty to utilize reasonable procedures to ensure maximum possible accuracy in consumer reports it sold about Ms. White with a willful or reckless disregard for compliance. This willful or reckless disregard is evidenced by the history of non-compliance and patent inaccuracy of the account based on the information in Equifax's possession and control at the time.

50. Equifax's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

UNOFFICIAL DOCUMENT

51. Accordingly pursuant to 15 U.S.C. § 1681n, Equifax is liable to Plaintiff for the greater of her actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Equifax for:

a. The greater of statutory damages of $1,000 per incident or her actual damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

**COUNT II**
**EQUIFAX'S NEGLIGENT VIOLATIONS of 15 U.S.C. § 1681e(b)**

52. Plaintiff adopts and incorporates Paragraphs 1 – 42 as if fully restated herein.

53. Defendant failed to follow reasonable procedures to ensure maximum possible accuracy by allowing a consumer debt, which had been opened and become delinquent well before Plaintiff's Bankruptcy case was filed, to continue to report to Plaintiff's credit file well after her bankruptcy discharge.

54. Equifax could have adopted a procedure requiring the data furnisher to provide a copy of the discharge paperwork or a reaffirmation of debt prior to accepting reporting as a way of preventing this type of inaccuracy from occurring.

UNOFFICIAL DOCUMENT

55. Instead, Equifax had no such procedures in place.

56. Ms. White is not the first consumer who has had to dispute a discharged debt inaccurately reporting as owed to Equifax.

57. The Defendant negligently failed to uphold its duty to utilize reasonable procedures to ensure maximum possible accuracy in consumer reports it sold about Ms. White.

58. Equifax's misconduct was a direct and proximate cause of, as well as a substantial factor in, the injuries, damages, and harm to Plaintiff.

59. Accordingly pursuant to 15 U.S.C. § 1681o, Equifax is liable to Plaintiff actual damages, reasonable attorney's fees, and costs.

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to enter judgment against Equifax for:

a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);
b. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and,
c. Such other relief that this Court deems just and proper.

UNOFFICIAL DOCUMENT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right

Respectfully submitted on May 12, 2026,

**SERAPH LEGAL, P.A.**

*/s/ James Hubbard*
James Hubbard, Esq.
Florida Bar No.: 0121405
JHubbard@SeraphLegal.com
3505 E Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-321-2349
Fax: 855-500-0705
*Counsel for Plaintiff*

UNOFFICIAL DOCUMENT